# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL LUCAS,**

      **Plaintiff,**

      v.                      Case No. 10-C-973

**MICHAEL J. ASTRUE,**
*Commissioner of Social Security*,

      **Defendant.**

## DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

**I. HISTORY**

Michael Lucas ("Lucas"), also known as Michael Griffin, (Tr. 107; 112), applied for Social Security Disability Insurance and Supplemental Security Income on May 23, 2006. (Docket No. 12 at 1.) However, Lucas continued to work on a fulltime basis as a machinist until December 2007 when he stopped because he could no longer do the lifting the job required and because he could not "stand very long." (Tr. 24, 29.)

Lucas' initial claim was denied on July 24, 2006 and upon reconsideration on October 16, 2006. (Docket No. 12 at 1.) Lucas requested a hearing before an Administrative Law Judge ("ALJ") and a hearing was held two-and-a-half years later on May 6, 2009. (Docket No. 12 at 1-2.) Shortly before this hearing, Lucas' attorney amended his alleged onset date to January 1, 2008. (Tr. 11.) Lucas testified at this hearing along with a vocational expert ("VE"). (Tr. 11.) The ALJ issued a decision denying his claim on June 9, 2009. (Tr. 11-18.) The ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied review on September 2, 2010. (Docket No. 12 at 2.) The present action was filed on October 31, 2010. (Docket No. 1.)

At the time of the hearing, Lucas was an individual closely approaching advanced age. He had an obtained an associates degree and had worked previously a machinist, foundry worker, meat packer, and tannery worker. (Docket No. 12 at 2.) The ALJ found that he suffers from the following severe impairments: hearing loss; degenerative joint disease, arthritis and facet arthopathy with chronic back and knee pain; asthma; depression; bipolar disorder; and substance abuse. (Tr. 13.) The court shall discuss additional facts below as they are necessary for the resolution of arguments raised by the plaintiff.

## II. STANDARD OF REVIEW: SUBSTANTIAL EVIDENCE

In addressing the issues raised by the claimant, the court is limited to determining whether the ALJ's factual findings are supported by "substantial evidence." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). The court may not re-weigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute its own judgment for that of the Commissioner. Id.; Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

The substantial evidence burden is satisfied when the evidence is such that a reasonable mind might accept it as adequate to support a conclusion. Williams v. Apfel, 179 F.3d 1066, 1071 (7th Cir. 1999). Although a mere scintilla of proof will not suffice, Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999), substantial evidence may be something less than the greater weight or preponderance of the evidence, Young v. Sullivan, 957 F.2d 386, 388 (7th Cir. 1992). If the ALJ rejects uncontradicted evidence, reasoning for that rejection must be clearly articulated. Id.; Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's decision rests on the credibility determination, this court will overturn that determination only if it is patently wrong. Powers v.

Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Special deference is appropriate because the ALJ is in the best position to see and hear the witness and to determine credibility. Id. at 435.

When the Commissioner denies social security benefits, the ALJ is required to "build an accurate and logical bridge from the evidence to [his] conclusions" so that a reviewing court may afford the claimant meaningful review of the SSA's "ultimate findings." Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citing Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002)); Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). Further, the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele, 290 F.3d at 940. Finally, if the ALJ committed an error of law, this court may reverse the Commissioner's decision, regardless of whether it is supported by substantial evidence. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

Simply stated, this court's role is not to look at all the evidence again and make an independent determination of whether the claimant is disabled. This court's role is very limited. If the ALJ complied with the rules and regulations and the decision is supported by substantial evidence, the court must affirm that decision, despite the claimant's strong disagreement.

### III. DETERMINING DISABILITY: A FIVE-STEP ANALYSIS

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether the claimant was disabled, the ALJ applied the following five step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairments equates to one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appx. 1 ("Appendix 1"); (4) whether the claimant is unable to perform past relevant work; and (5) whether the claimant is incapable of performing work in the national

3

economy. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920; Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step, or on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled. Zurowski v. Halter, 245 F.3d 881, 885-86 (7th Cir. 2001) (citing Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). The claimant bears the burden of proof in the first four steps. Young v. Secretary of Health & Human Servs., 957 F.2d 386, 389 (7th Cir. 1992). If the claimant sustains that burden, at Step 5, the burden shifts to the Commissioner. Id. The ALJ is required to carefully consider and explain in his or her decision the weight given to the opinions of state agency doctors and consultants. SSR 96-6p.

## IV. ANALYSIS

Lucas contends that the ALJ erred at Step 5 when she determined that Lucas had the residual functional capacity ("RFC") for light unskilled work provided there is only occasional stooping and crouching, no concentrated fumes or environmental irritants, and no excessively noisy environments. Primarily, Lucas takes issue with the ALJ's conclusions regarding Lucas' ability to stand and walk, which is required for a person to have the RFC for light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10; Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001).

The ALJ's conclusion that Lucas retained the RFC for light work was largely a credibility determination governed by SSR 96-7p. Lopez v. Barnhart, 336 F.3d 535, 539-40 (7th Cir. 2003);

4

Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003). An ALJ's credibility determination will not be upset unless it is "patently wrong," Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004) (citing Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003)), or "divorced from the facts contained in the record." Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008).

SSR 96-7p requires that an ALJ carefully evaluate the "intensity, persistence, and functionally limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p. Further, an ALJ's evaluation of the claimant's credibility must contain "specific reasons" and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicatory gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In making a credibility determination, an ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." Blom v. Barnhart, 363 F. Supp. 2d 1041, 1051 (E.D. Wis. 2005) (quoting Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). But this is certainly a factor that is relevant to the credibility analysis. Additionally, SSR 96-7p requires an ALJ to consider: (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of the pain, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medication, (5) treatment other than medication, (6) any measures the claimant has used to relieve the pain or other symptoms, and (7) functional limitations and restrictions. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3).

The ALJ determined that Lucas suffered from an underlying medically determinable impairment that could be reasonably expected to produce the claimant's pain or other symptoms, but Lucas' statements regarding the intensity, persistence, or functionally limiting effects of pain or other symptoms were not credible. (Tr. 15.)

Although Lucas testified that he was capable of walking only half a block and could stand for only short periods of time, the ALJ concluded that these reported limitations were not consistent with the objective medical evidence. (Tr. 15.) A bone scan showed some facet arthropathy in Lucas' back and mild degenerative joint disease in his knees; an MRI around the same time revealed similar abnormalities. (Tr. 16.) However, the ALJ noted lumbar spine and knee x-rays from June 2008 were predominantly normal. (Tr. 16.) In December of 2008, Lucas reported that he was not having any problems with his knees. (Tr. 16.) The ALJ also noted that Lucas' history of conservative treatment and failures to participate in recommended physical therapy and pain management suggested that his limitations were not as severe as claimed. (Tr. 16.)

In support of his claimed ambulatory and postural limitations, in his present brief Lucas points to an evaluation completed by a nurse practitioner to establish Lucas' eligibility for reduced bus fare. Lucas contends that the ALJ improperly disregarded this medical opinion because it was offered by a nurse practitioner instead of a physician. (Docket No. 12 at 11-12.) Lucas also notes that he had, at times, participated in physical therapy, and at the time of the hearing was involved in a pain management group. (Docket No. 12 at 11.) Finally, Lucas contends that the ALJ failed to appropriately consider that he was "prescribed a cane in January 2007." (Docket No. 12 at 12.)

The evidence in this case was somewhat contradictory and thus in arriving at any decision the ALJ was necessarily required to accept certain evidence while rejecting other evidence. A decision to reject certain evidence is within the discretion of the ALJ. Provided the ALJ complied with the appropriate regulations and supplied sufficient explanation for a decision, it is a decision that cannot be upset by this court. Having reviewed the ALJ's decision, the record in this matter, and the parties' briefs, the court concludes that the ALJ's credibility determination was not patently wrong and therefore cannot be upset. All of the evidence that Lucas contends that the ALJ failed to

consider was, in fact, explicitly discussed by the ALJ. Although the ALJ did not give that evidence the weight Lucas would have liked, the ALJ did adequately explain why she was discounting it.

As the ALJ noted, under Social Security regulations a nurse practitioner is not an acceptable medical source. Notably, according to the form the nurse practitioner completed, the Milwaukee County Transit System likewise does not consider a nurse practitioner an acceptable medical source even to determine whether an individual is qualified for reduced bus fare; the form states it must be completed by a licensed physician, psychologist, optometrist, audiologist, or chiropractor. (Tr. 609.) Nonetheless, an opinion from someone who is not an acceptable medical source cannot be simply ignored when considering whether a person is disabled under the Social Security Act. SSR 06-03p.

Although the ALJ was required to consider the nurse practitioner's opinion, she was not required to accept it. The ALJ appropriately determined that the nurse practitioner's opinion need not be given any weight because the form was completed for the limited purpose of obtaining reduced bus fare, the standards for which are not the same as those applicable to a determination of disability under the Social Security Act. (Tr. 16-17.) Moreover, consistent with SSR 06-03p, the ALJ noted the conspicuous absence of any similar assessment by any other medical source as to Lucas' RFC since the amended alleged onset date. (Tr. 17.) Although Lucas contends that the record contains other references to his difficulties in standing or walking, (Docket No. 12 at 12), at this point in his brief, he fails to refer to any portion of the record to support his claim. But at other points in his brief, Lucas refers to portions of the record indicating that Lucas is capable of sitting for 30-45 minutes, standing for an hour, and walking 3-4 blocks. (Docket No. 12 at 4 (citing Tr. 502-03; 532).)

The limitations indicated in the record appear to be based upon Lucas' self-reporting rather than objective tests or observations. The ALJ was entitled to discount these subjective complaints in the same manner an ALJ is able to discount other subjective complaints. A subjective report is not

entitled to any special significance simply because it happens to appear in a medical record rather than on an Administration form or in a hearing transcript. Moreover, these self-reported limitations are notably less severe than those indicated by the nurse practitioner on the fare discount form, (see Tr. 609), making it all the more reasonable for the ALJ to discount the boxes checked by the nurse practitioner.

Lucas also tries to attach significance to the fact that he was "prescribed" a cane. There is nothing in the record to suggest that a medical professional independently and objectively determined that a cane was necessary. Rather, the evidence suggests merely that Lucas requested a cane, which he was provided. (See Tr. 532.) Nonetheless, the use of a cane, whether "prescribed" by a medical professional or simply picked up at Walgreens by a claimant, is a factor that is relevant to the assessment of a claimant's credibility and ultimate disability. But surely, the use of a cane need not automatically lead to a finding of disability. In light of the absence of objective medical evidence to support the intensity and severity of impairments claimed by Lucas, the ALJ's decision to ultimately conclude that Lucas was capable of light work was appropriate. Thus, it is the conclusion of this court that the ALJ complied with SSR 06-03p and other applicable regulations and rulings when she discounted the boxes the nurse practitioner checked on the bus fare discount form.

The ALJ also appropriately considered Lucas' failure to comply with prescribed treatment as a part of her determination that Lucas' impairments were not as severe as he claimed. As Lucas acknowledges, his participation in physical therapy and pain management was sporadic at best. (Docket No. 12 at 11.) Lucas does not contend that he ever provided an appropriate explanation for his failure to comply with recommended treatment. Thus, it was reasonable for the ALJ to conclude that Lucas' inaction "suggests that the symptoms may not have been as serious as has been alleged." (Tr. 16.) As SSR 96-7p states: "[T]he individual's statements may be less credible if the level or

frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p.

Lucas also takes issue with the ALJ's statement that the objective medical evidence does not support Lucas' reports of disabling back and knee pain. Lucas points to medical records from April of 2007 which indicate that he suffered from "'facet arthropathy at the L3-L4 level bilaterally, most severe on the left,' 'mild circumferential disc bulging at L4-L5," and mild degenerative joint disease in the bilateral knees." (Docket No. 12 at 3 (quoting Tr. at 491-92; 499).)

Notably, evidence Lucas refers to was from April of 2007, a period before Lucas' amended alleged onset date and during a period that Lucas was still engaged in substantial gainful activity working full time as a machinist. (Tr. 24; 45.) Nonetheless, the ALJ did explicitly consider this evidence. (Tr. 16.) But not surprisingly, she placed greater weight upon more recent objective medical evidence, from after Lucas' amended alleged onset date, which generally indicated that Lucas' back and knees were normal and unremarkable. (Tr. 16.) Placing greater weight upon more recent evidence rather than evidence from a period before Lucas was allegedly disabled is entirely reasonable and appropriate, and therefore the court finds no error in this aspect of the ALJ's decision.

Finally, Lucas contends that the ALJ erred when she determined that Lucas' testimony regarding his hearing loss was only partially credible. The ALJ noted that the evidence in the record demonstrated that when Lucas wore his hearing aids, contrary to his testimony, he was able to hear conversations. (Tr. 15.) Thus, it was wholly appropriate for the ALJ to conclude that the only hearing-related impairment Lucas suffered from was an inability to hear adequately in excessively noisy environments. The ALJ included this limitation in her questions to the VE, (Tr. 47), and in her

RFC determination, (Tr. 15). Accordingly, the court concludes that this determination cannot be upset.

## V. CONCLUSION

The ALJ's decision that Lucas retained the RFC for unskilled light work with the additional restrictions of only occasional stooping and crouching, no concentrated fumes or environmental irritants, and no excessively noisy environments was supported by substantial evidence. The ALJ reached this decision in accordance with the applicable law, and therefore, this court cannot upset the decision of the ALJ.

The severity of Lucas' self-reported limitations, including his ability to stand, sit, and walk, as well as his ability to hear, was not supported by other evidence in the record. Lucas failed to comply with prescribed treatments and the objective medical evidence regarding Lucas' back and knees from the period of Lucas' alleged disability was predominantly normal and unremarkable. The ALJ appropriately discounted the report of a nurse practitioner because this report was completed for a discrete limited purpose, was inconsistent with other evidence, and was not supported by any similar assessment by an appropriate medical source. Therefore, consistent with SSR 96-7p, the ALJ appropriately found Lucas' self-reported limitations were not credible.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment dismissing plaintiff's complaint and this action.

Dated at Milwaukee, Wisconsin this 9th day of May, 2011.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge